UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIARA THORNTON,

        Plaintiff,                      Case No. 21-10858

vs.                                 HON. MARK A. GOLDSMITH
                                 MAGISTRATE JUDGE
SAM CARAMAGNO, et al.,       ANTHONY P. PATTI

        Defendants.

---

| | |
|---|---|
| ROD A. DUNLAP (P37558)<br>JASON J. KUCMIERZ (P63842)<br>DUNLAP & KUCMIERZ, PLLC<br>Attorneys for Plaintiff<br>37000 Grand River Ave., Ste 230<br>Farmington Hills, MI  48335<br>rod@dk-lawoffice.com<br>info@dk-lawoffice.com | BRIAN M. SCHWARTZ (P69018)<br>SCHUYLER FERGUSON (ILLINOIS ARDC NO. 6325615)<br>MILLER CANFIELD PADDOCK & STONE PLC<br>Attorneys for Defendant<br>150 West Jefferson, Suite 2500<br>Detroit, Michigan 48226<br>(313) 963-6420<br>schwartzb@millercanfield.com<br>ferguson@millercanfield.com |

---

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

Defendants Sam Caramagno ("Caramagno"), Susan Gottlieb ("Gottlieb"),

and Good 4 Your Soul, LLC d/b/a Gottlieb Group Real Estate ("Gottlieb Group"),[1]

by and through their attorneys, Miller, Canfield, Paddock and Stone, P.L.C., move

---

[1] Caramagno, Gottlieb, and Gottlieb Group are collectively referred to as "Defendants."

to dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for the following reasons, as more fully explained in the attached Brief:

1.      On or about October 12, 2020, Plaintiff filed her complaint against Defendants.

2.      On April 16, 2021, Defendants timely removed Plaintiff's complaint to this Court.  *See* Notice of Removal (Dkt. 1, PageID.1-5).

3.      On April 27, 2021, Defendants filed a Motion to Dismiss Plaintiff's Complaint.  *See* Defendant's Motion to Dismiss Plaintiff's Complaint (Dkt. 7, PageID.63-65).  The Court then issued an Order allowing Plaintiff to file an amended complaint in light of the Defendants' motion.  *See* Order Regarding Motion to Dismiss (Dkt. 8, PageID.102).  Plaintiff's First Amended Complaint was filed on May 18, 2021.  *See* Plaintiff's First Amended Complaint (Dkt. 9, PageID.104-62). Then, the Court denied Defendants' Motion to Dismiss Plaintiff's Complaint as moot.  *See* Order Denying Motion to Dismiss Without Prejudice (Dkt. 10, PageID.163).

4.      All of Plaintiff's claims should be dismissed, with prejudice, because even after having the opportunity to cure the deficiencies in her original complaint, Plaintiff has still failed to state sufficient factual allegations against any defendant to make her claims "plausible on their face," as required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  In particular, Plaintiff has not provided grounds

that she is entitled to relief which are more than formulaic recitations of the elements of her stated causes of actions.  *Id.* at 555.  Additionally, the sparse facts Plaintiff does allege undercut her legal theories.

5.      Pursuant to Local Rule 7.1(a)(2) and this Court's Practice Guidelines, the undersigned counsel certifies that counsel personally spoke to, or met with, opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; opposing counsel expressly denied concurrence..

6.      LOCAL RULE CERTIFICATION:  I, Brian M. Schwartz, certify that this document complies with Local Rule 5.1(a), including:  double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

WHEREFORE, Defendants request that the Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

Respectfully submitted,

Miller, Canfield, Paddock and Stone, P.L.C.
By: */s/* Brian M. Schwartz
schwartzb@millercanfield.com

DATED: June 1, 2021

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIARA THORNTON,

        Plaintiff,                    Case No. 21-10858

vs.                                  HON. MARK A. GOLDSMITH
                                  MAGISTRATE JUDGE
SAM CARAMAGNO, et al.,        ANTHONY P. PATTI

        Defendants.

---

ROD A. DUNLAP (P37558)
JASON J. KUCMIERZ (P63842)
DUNLAP & KUCMIERZ, PLLC
Attorneys for Plaintiff
37000 Grand River Ave., Ste 230
Farmington Hills, MI  48335
rod@dk-lawoffice.com
info@dk-lawoffice.com

BRIAN M. SCHWARTZ (P69018)
SCHUYLER FERGUSON (ILLINOIS ARDC NO. 6325615)
MILLER CANFIELD PADDOCK & STONE PLC
Attorneys for Defendant
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420
schwartzb@millercanfield.com
ferguson@millercanfield.com

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

## **Table of Contents**

**Page(s)**

Table of Authorities ................................................................................... iii

Controlling or Most Appropriate Authority.......................................v

Statement of Issues Presented ...........................................................vi

I. Introduction.................................................................................................1

II. Statement of Facts ...............................................................................2

III. Argument ................................................................................................5

    A.  Standard of Review.......................................................................5

    B.  Plaintiff's Complaint Fails to State a Claim and Should Be
        Dismissed Pursuant to Rule 12(b)(6). ........................................8

        1.  Plaintiff's Discrimination Claims Fail Because They Are
            Formulaic and Conclusory. .................................................8

            a.  Plaintiff's Allegations are Formulaic and Conclusory. .......8

            b.  Plaintiff has Failed to Establish a Prima Facie Claim
                of Housing Discrimination. ...............................................10

            c.  Plaintiff has Not Shown that Defendants' Legitimate,
                Nondiscriminatory Reason for the Housing Decision
                Was Pretextual.....................................................................12

        2.  Plaintiff has Failed to State Plausible Claims under 42
            U.S.C. Sections 1981 and 1982, the United States
            Constitution, and the Michigan Constitution. ...............................13

        3.  Plaintiff has Failed to State Plausible Claims for Breach of
            Contract or Tortious Interference with a Contract or
            Business Relationship. ................................................................18

            a.  Plaintiff has Failed to State a Plausible Claim for
                 Breach of Contract..............................................................18

            b.  Plaintiff has Failed to State Plausible Claims for
                 Tortious Interference with a Contract or Business
                 Relationship.........................................................................20

        4.  Plaintiff has Failed to State Plausible Claims for Fraudulent
            Misrepresentation ........................................................................22

i

IV. Conclusion ......................................................................................................24

## **Table of Authorities**

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
    727 F.3d 502 (6th Cir. 2013) .................................................................6

*Al-Saka v. Sessions*,
    904 F.3d 427 (6th Cir. 2018) ..............................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................*passim*

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................... iii, 5, 6, 7

*Blackburne & Brown Mortg. Co. v. Ziomek*,
    692 N.W.2d 388 (Mich. Ct. App. 2004)....................................... iii, 19

*Center for Bio-Ethical Reform v. Napolitano*,
    648 F.3d 365 (6th Cir. 2011) ...............................................................7

*Chambers v. City of Detroit*,
    786 F. Supp. 2d 1253 (E.D. Mich. 2011) ..........................................21

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
    140 S. Ct. 1009 (2020).................................................................. iii, 16

*Gucwa v. Lawley*,
    No. 15-10815, 2017 WL 282045 (E.D. Mich. Jan. 23, 2017)............20

*House of Providence v. Meyers*,
    458 F. Supp. 3d 621 (E.D. Mich. 2020) .............................................14

*Kinde v. Goschinski*,
    No. 09-10131, 2010 WL 779288 (E.D. Mich. Mar. 8, 2010)............11

*Mencer v. Princeton Square Apartments*,
    228 F.3d 631 (6th Cir. 2000) ....................................................... iii, 10

*New Albany Tractor v. Louisville Tractor*,
   650 F.3d 1046 (6th Cir. 2011) ..............................................................7

*TRBR, Inc. v. Americredit Fin. Servs., Inc.*,
   No. 20-11269, 2021 WL 1165599 (E.D. Mich. Mar. 26, 2021).........................18

*Woodland v. Michigan Citizens Lobby*,
   378 N.W.2d 337 (Mich. 1985)..............................................................18

**Statutes**

42 U.S.C. § 1981 ................................................................. 1, 8, 9, 10, 13, 14, 16, 17

42 U.S.C. § 1982......................................................................1, 8, 9, 10, 12, 13

Fair Housing Act, 42 U.S.C. § 3601, *et seq.*........................................................1, 8, 12

Michigan's Elliott-Larson Civil Rights Act, MCL 37.2101, *et seq.* .....1, 8, 9, 10, 12

**Court Rules**

Fed. R. Civ. P. 12(b)(6).........................................................................2, 8

Fed. R. Civ. P. 8 ..................................................................................6

**Other Authorities**

Constitution of the State of Michigan.........................................................13, 17, 18

U.S. CONST. amend. XIV ........................................................................17

## **Controlling or Most Appropriate Authority**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*Mencer v. Princeton Square Apartments*, 228 F.3d 631 (6th Cir. 2000)

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009 (2020)

*Blackburne & Brown Mortg. Co. v. Ziomek*, 692 N.W.2d 388 (Mich. Ct. App. 2004)

**<u>Statement of Issues Presented</u>**

I.  Where Plaintiff has failed to allege facts to support her formulaic allegations that Defendants violated the Elliott-Larsen Civil Rights Act ("ELCRA"), by discriminating against her based on her race and color, should her claims in Count I be dismissed, with prejudice, for failure to state a claim?

II.  Where Plaintiff has failed to allege facts to support her formulaic allegations that Defendants violated the Fair Housing Act ("FHA"), by discriminating against her based on her race and color, should her claims in Count II be dismissed, with prejudice, for failure to state a claim?

III.  Where Plaintiff has failed to allege facts to support her formulaic allegations that Defendants violated 42 U.S.C. Sections 1981 and 1982 by discriminating against her based on her race and color, should those claims, contained in Count III, be dismissed, with prejudice, for failure to state a claim?

IV.  Where the Due Process and Equal Protection Clauses of the United States Constitution and Constitution for the State of Michigan apply only to government actions, and Defendants are private actors, should those claims, contained in Count III, be dismissed, with prejudice, for failure to state a claim?

V.  Where Plaintiff has failed to allege facts to support her formulaic allegations that Plaintiff and Defendant Sam Caramagno ("Caramagno") entered into a

contract and breached that contract, and where Plaintiff's First Amended Complaint shows that Plaintiff and Caramagno did not enter into such a contract, should her breach of contract claim, contained in Count IV, be dismissed, with prejudice, for failure to state a claim?

VI.   Where Plaintiff has failed to allege facts to support her formulaic allegations that Defendants Susan Gottlieb ("Gottlieb"), and Good 4 Your Soul, LLC d/b/a Gottlieb Group Real Estate ("Gottlieb Group") tortiously interfered with her alleged contract with Caramagno, and where Plaintiff's First Amended Complaint shows that Plaintiff and Caramagno did not enter into such a contract, should her tortious interference of contract claims, contained in Count V, be dismissed, with prejudice, for failure to state a claim?

VII.   Where Plaintiff has failed to allege facts to support her formulaic allegations that Gottlieb and Gottlieb Group tortiously interfered with her alleged business relationships with Caramagno and Quicken Loans, should her tortious interference of a business relationship claims, contained in Count V, be dismissed, with prejudice, for failure to state a claim?

VIII.   Where Plaintiff has failed to allege facts to support her formulaic allegations that Defendants made fraudulent misrepresentations to Plaintiff, should her Misrepresentation/Fraud claim, contained in Count VI, be dismissed, with prejudice, for failure to state a claim?

# I.    Introduction

This case involves a property, located at 316 Hillcrest Avenue in Grosse Pointe Farms, Michigan ("the Property"), which was owned by Defendant Sam Caramagno.  Plaintiff Kiara Thornton is a dissatisfied prospective buyer of the Property with no legal recourse.  Despite being presented with a motion to dismiss pointing out all the deficiencies of her original Complaint, nothing in Plaintiff's First Amended Complaint demonstrates that her claims against Defendants are viable. She claims a breach of contract, but the sparse facts demonstrate there is no contract. She alleges discrimination, but she pleads no facts showing that Defendants even knew her race.  And the parties never met during the pandemic, so there is no plausible way she can support her claims.

 Defendants Gottlieb Group and Susan Gottlieb, a broker for Gottlieb Group, served as the broker for the proposed sale of the Property.  Plaintiff claims that Defendants refused to sell her the Property in violation of Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq.* ("ELCRA"), the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, the United States Constitution, the Constitution of the State of Michigan, 42 U.S.C. § 1981, and 42 U.S.C. § 1982.  Plaintiff also claims that she and Defendant Caramagno had entered into an agreement to purchase the Property (the "Alleged Agreement"), Caramagno breached the Alleged Agreement,

1

and Gottlieb and Gottlieb Group tortiously interfered with the Alleged Agreement. Finally, she makes a claim of Misrepresentation/Fraud.

Plaintiff asserts each of these claims in a formulaic and conclusory fashion. Even though the time to sign the proposed purchase agreement had expired before she signed it, and the facts show that there was another buyer whose purchase agreement predated the Alleged Agreement and to whom Defendants were obligated to sell the Property, Plaintiff alleges she was not sold the Property because of her race.  Because the Amended Complaint, like the original Complaint before it, is devoid of plausible factual allegations establishing any of Plaintiff's claims, all of her claims should be dismissed for failure to state a claim.

## II.   Statement of Facts[1]

Caramagno previously owned the Property located at 316 Hillcrest Ave., City of Grosse Pointe Farms, Wayne County, Michigan.  (Dkt. 9, Plaintiff's First Amended Complaint, PageID.105, ¶¶ 5, 7).  Plaintiff was a prospective buyer of the Property.  (*Id.*, ¶ 7).  Gottlieb is a broker at Gottlieb Group, which served as the broker for Plaintiff's proposed purchase of the Property.  (*Id.*)

All communications set forth in the Complaint between Defendants and

---

[1] For the purposes of this Motion only, Defendants assume – as they must under motions brought pursuant to Fed. R. Civ. P. 12(b)(6) – that the facts alleged in Plaintiff's Complaint are true. However, conclusory allegations are not factual ones, and may not be so accepted. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Plaintiff or Plaintiff's counsel occurred between April 24, 2020 and June 4, 2020. (*See* Dkt. 9, PageID.104-62).  During all times relevant, due to the pandemic, Defendants were not permitted to meet with Plaintiff, and Plaintiff does not assert that she met any of the Defendants.  (*See id.*)  Indeed, as Gottlieb wrote to Plaintiff: "The Governor forbids any entering of a home for Realtors in Michigan at this time." (*Id.*, PageID.152).

Plaintiff claims that she and Caramagno entered into the Alleged Agreement for the purchase of the Property and that the Alleged Agreement was drafted by Gottlieb.  (*Id.*, PageID.108, ¶ 22).  However, as the Alleged Agreement clearly stated, Gottlieb Group was only authorized by Plaintiff to obtain Caramagno's written acceptance of Plaintiff's offer until April 24, 2020 at 5:00 p.m.  (Dkt. 9, Ex. B, Alleged Agreement, PageID.143, ¶ 38).  The Alleged Agreement also clearly stated, "**TIME IS OF THE ESSENCE WITH RESPECT TO THIS AGREEMENT.  TIME LIMITS SHALL BE STRICTLY OBSERVED.**" (*Id.*, ¶ 37).

Despite only authorizing Gottlieb Group to obtain Caramagno's written acceptance of her offer until April 24, 2020 at 5:00 p.m., Plaintiff did not sign the Alleged Agreement until April 24, 2020 at 5:26 p.m.  (*Id.*, ¶ 40).  Caramagno did not sign the Alleged Agreement until three minutes later, at 5:29 p.m., 29 minutes after the period to enter into an enforceable agreement expired.  (*Id.*, ¶ 41).

3

On April 28, 2020, Susan Gottlieb notified Plaintiff that Caramagno would not be able to sell the Property to Plaintiff and asked Plaintiff to sign a document releasing any rights she had to the Property. (Dkt. 9, Ex. E, Apr. 28-30, 2020 Emails between Plaintiff and Gottlieb, PageID.153-54). Plaintiff declined to sign the release and insisted that Gottlieb provide times to complete an inspection of the Property. (*Id.*, PageID.153). Gottlieb then explained on April 30, 2020 that a previous buyer had not signed a cancellation and release of a sales agreement that predated the Alleged Agreement, and Caramagno could not sell the Property to two parties. (*Id.* at PageID.151). Gottlieb wrote, "The seller would LOVE to sell you the house . . . because your offer is much higher than the other buyer. However as I have told you numerous times the other buyer NEEDS to sign a release in order to move forward with a sale to you or anyone else." (*Id.* at PageID.151-52).

Later on April 30, 2020, Plaintiff's counsel wrote to Gottlieb Group, stating that he was representing Plaintiff and threatening litigation related to the Alleged Agreement. (Dkt. 9, Ex. F, Apr. 30, 2020 Email from Rod Dunlap to Gottlieb Group, PageID.156). Though Plaintiff's counsel accused Defendants of violating the Alleged Agreement, he made no mention of any alleged racial discrimination in his April 30, 2020 email. (*Id.*) He sent another letter to Plaintiff's counsel on May 5, 2020, in which he again made no allegations of racial discrimination. (Dkt. 9, Ex. G, May 5, 2020 Letter from Rod Dunlap to Gottlieb, PageID.158-59). It was not

4

until a letter dated June 4, 2020 that Plaintiff's counsel injected conclusory allegations that a racial motive was the reason for the proposed sale of the Property falling through.  (Dkt. 9, Ex. H, June 4, 2020 Letter from Rod Dunlap to Gottlieb and Caramagno, PageID.161).  That letter, however, contains no facts supporting the allegations.

### III.   Argument

**A. Standard of Review**

Defendants' motion tests whether Plaintiff has stated claims upon which relief can be granted and whether, under Rule 8(a) of the Federal Rules of Civil Procedure, she has made the requisite showing that she is entitled to relief.  Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to survive a motion to dismiss, a plaintiff must assert sufficient factual allegations to establish that her claims are "plausible on [their] face," *i.e.*, there must be more than the mere possibility that defendants acted unlawfully.  *Id.* at 556.  "A plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court elaborated on *Twombly*, explaining the proper two-step analysis.  First, although courts generally accept as true the complaint allegations, this rule is "inapplicable to legal conclusions."  *Id.* at 678.  In other words, courts first disregard all conclusory

statements and allegations in the complaint.  This is because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.  Thus, allegations based upon "information and belief" should be disregarded because they "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013).

Second, courts review the remaining allegations to determine whether they "plausibly" entitle the plaintiff to relief.  For a claim to be "plausible," it is insufficient that the facts alleged are "'consistent with' a defendant's liability" or that a violation is "conceivable." *Iqbal,* 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 567).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

In *Iqbal*, a discrimination case, the Court first identified conclusory allegations that "amount[ed] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Id.* at 681 (quoting *Twombly*, *supra*).  These assertions, such as that the defendant adopted a policy "because of"

6

its adverse effects on individuals with a certain race, religion, and national origin, were not entitled to a presumption of truth.  *Id.*  At step two, the Court addressed the remaining factual allegations, which were "consistent with" discriminatory treatment, "[b]ut given more likely explanations, [the allegations did] not plausibly establish [their] purpose."  *Id.* at 681.  Thus, dismissal was appropriate.

Interpreting *Twombly* and *Iqbal*, the Sixth Circuit has explained that, "the combined effect of *Twombly* and *Iqbal* require [a] plaintiff to have greater knowledge now of factual details in order to draft a 'plausible complaint.'"  *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011).  Plaintiffs must plead enough factual detail to state a claim that is plausible, or risk having their complaint dismissed for failure to state a claim.  *Id.* at 1050, citing *Twombly.*  In other words, a "plaintiff must allege specific facts [to support a plausible claim] even if those facts are only within the head or hands of the defendants.  The plaintiff may not use the discovery process to obtain these facts after filing suit.  The language of *Iqbal*, 'not entitled to discovery,' is binding on the lower federal courts."  *Id.*

Accordingly, a complaint that does not provide sufficient factual detail, that does not provide the "when, where, in what or by whom" to support conclusory allegations, fails to state a claim.  *Center for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011); *see also id.* at 368 (noting that following *Twombly*

and *Iqbal*, it is "well settled" that a complaint must contain sufficient factual allegations to plausibly state a claim for relief).

## B. Plaintiff's Complaint Fails to State a Claim and Should Be Dismissed Pursuant to Rule 12(b)(6).

Plaintiff asserts Caramagno breached the Alleged Agreement, Gottlieb and Gottlieb Group tortiously interfered with the Alleged Agreement, and all three Defendants acted in a discriminatory manner towards her and made fraudulent misrepresentations to her. However, the Amended Complaint is devoid of any factual allegations to support Plaintiff's position. Her claims are not plausible, and they should all be dismissed for the following reasons.

### 1. Plaintiff's Discrimination Claims Fail Because They Are Formulaic and Conclusory.

#### a. Plaintiff's Allegations are Formulaic and Conclusory.

Counts I and II allege discrimination based on Plaintiff's race and color in violation of the ELCRA and FHA, while Count III alleges, in part, discrimination based on Plaintiff's race and color in violation of 42 U.S.C. Sections 1981 and 1982. In support of those claims, Plaintiff asserts that she is an African American, cites the racial demographics of Gross Pointe Farms, and states that Plaintiff's proposed purchase of the Property was not completed because she is an African American and because of the "discriminatory and racist attitudes of the Defendants and/or neighbors or other persons putting pressure on the Defendants." (Dkt. 9, Amended Complaint, PageID.113-14, ¶¶ 59, 62, 70). Then, for each count, Plaintiff simply

8

recites the elements of each claim in formulaic fashion.  (*Id.*, PageId.114-15, ¶ 71, PageID.117, ¶ 81, PageID.119, ¶ 91).  Plaintiff does not plead *facts* anywhere in her complaint showing that Defendants actions were motivated, in part or in whole, by the fact that Plaintiff is an African American.

In analyzing Plaintiff's discrimination claims, this Court must first identify all conclusory statements that are not entitled to any presumption of truth.  *Iqbal*, 556 U.S. at 681.  The Court cannot consider or accept as true any such conclusory statements.  *Id.*  Here, this includes Plaintiff's allegation that her proposed purchase of the Property was not completed because she is an African American and because of the "discriminatory and racist attitudes of the Defendants and/or neighbors or other persons putting pressure on the Defendants."  (Dkt. 9, Amended Complaint, PageID.112-13, ¶¶ 59, 62).  It also includes Plaintiff's conclusory, statutory recitations stating that Defendants violated the ELCRA and FHA "on the basis of race and color."  (*Id.*, PageID.114-15, ¶ 71, PageID.117, ¶ 81).  Finally, the Court cannot accept as true Plaintiff's conclusory statements contained in her Section 1981 and 1982 claims in Count III, including that the "behavior of the Defendants in refusing to sell the subject property to the Plaintiff, intimidating and harassing the Plaintiff, and in choosing to further ignore the rights of the Plaintiff in subsequently selling the same property to another violated the protections of both 42 U.S.C. 1981 and 1982."  (*Id.*, PageID.120, ¶ 91).

After identifying all conclusory statements that are not entitled to any presumption of truth, the Court must determine whether the remaining well-pleaded factual allegations plausibly state a claim entitled to relief. *Iqbal*, 556 U.S. at 681. Here, there is only one relevant factual allegation: that Plaintiff is an African American (Dkt. 9, Amended Complaint, PageID.113, ¶ 59). Such a statement, however, lacks sufficient factual detail that a race discrimination claim is "plausible on its face," and does not permit the Court to infer more than the mere possibility of misconduct. *Iqbal*, 556 U.S. at 679.

### b. Plaintiff has Failed to Establish a *Prima Facie* Claim of Housing Discrimination.

To establish a *prima facie* claim of racial discrimination in fair housing cases, whether under the ELCRA, FHA, Section 1981, or Section 1982, a plaintiff must establish: (1) she "is a member of a racial minority"; (2) "she applied for and was qualified to purchase certain property or housing"; (3) "she was rejected"; and (4) "the housing remained available thereafter." *Mencer v. Princeton Square Apartments*, 228 F.3d 631, 634-35 (6th Cir. 2000). A *prima facie* case cannot be made simply by showing that Plaintiff "was a qualified minority purchaser whose competitive offer for a property was rejected." *Id.* at 417.

For the first element, Plaintiff does not assert anywhere that Defendants knew she was an African American. This is perhaps not surprising, since there are no allegations that any Defendant ever met Plaintiff. Instead, all communications

referenced in the Complaint (which took place during the pandemic) occurred over text and email.  After this deficiency was pointed out in Defendants' initial Motion to Dismiss, Plaintiff responded by alleging that a neighbor observed her and adding a conclusory allegation that Defendants "became aware that Kiara Thornton is of African American descent," but still failed to plead any facts showing that Defendants knew her race.  (Dkt. 9, Amended Complaint, PageID.109, ¶¶ 31, 69). As courts in the Eastern District of Michigan have stated, "a *prima facie* case of racial discrimination inherently includes a requirement that the defendants knew that Plaintiffs were members of a racial minority."  *Kinde v. Goschinski*, No. 09-10131, 2010 WL 779288, at *6 (E.D. Mich. Mar. 8, 2010) (citing *Jackson v. Whitehouse*, No. 92–CV–74725–DT, 1993 WL 1624960, at *5 (E.D. Mich. Nov.23, 1993)). Thus, she has failed to adequately plead facts showing that the first element has been met.

Similarly, though Plaintiff has asserted that she applied for and was qualified to purchase certain property or housing and that she was rejected, she has failed to meet her pleading burden for the fourth element: that the Property remained available thereafter.  Plaintiff asserts in her Amended Complaint that she found six listings for the Property on the internet on May 6, 2020, but the exhibits attached to the Amended Complaint show that the Property was unavailable before she tried to buy it because a previous buyer declined to sign a release of a sales agreement that

predated the Alleged Agreement, and Defendants were required to honor the previous agreement.  (Dkt. 9, Amended Complaint, PageID.112, ¶ 58, PageID149, 151-52).  In other words, Plaintiff's own facts show that the Property was not available after she was rejected.[2]  Because Plaintiff has failed to include facts to assert a plausible, *prima facie* housing discrimination claims under the ELCRA, FHA, or 42 U.S.C. Section 1982, Counts I, II, and III should be dismissed.

> ### c.   Plaintiff has Not Shown that Defendants' Legitimate, Nondiscriminatory Reason for the Housing Decision Was Pretextual.

Even if Plaintiff had established a *prima facie* case of housing discrimination – she has not – she certainly has not established that the Defendants' legitimate, nondiscriminatory reason for not selling the Property to Plaintiff was pretextual. *Mencer v. Princeton Square Apartments*, 228 F.3d 631, 634 (6th Cir. 2000).

Here, Defendants articulated a legitimate, nondiscriminatory reason for declining to sell the Property to Plaintiff, which is evident in the Amended Complaint and the exhibits thereto: an initial buyer, whose offer Defendants believed had fallen through, ultimately decided to buy the Property.  The following facts make this legitimate, nondiscriminatory reason clear: (1) Defendants believed that all prior

---

[2] That a third-party website lists the property is irrelevant as to whether it is "remains available."  For example, Zillow (referenced in ¶8 of the Amended Complaint) contains numerous disclaimers that information regarding listings "should be independently reviewed and verified for accuracy."  (*See* https://www.zillow.com/z/info/mls-disclaimers/).

offers had fallen through (Dkt. 9, Amended Complaint, PageID.108, ¶ 24); (2) the initial prospective purchaser, who had communicated to Defendants that they did not want to buy the Property, had never signed a termination of their offer, and Defendants needed a signature terminating that offer before they could proceed with Plaintiff (*Id.*, PageID.109, ¶ 33-34); (3) that Defendants would have "LOVE[D] to sell" the Property to Plaintiff because her offer was "much higher than the other buyer," but Defendants could not sell the Property to two parties, and because the initial buyer did not sign the cancellation/release of the sales agreement, Defendants could not proceed with the sale to Plaintiff (Dkt. 9, Ex. E, Apr. 28-30, 2020 Emails between Plaintiff and Gottlieb, PageID.151-52); and (4) ultimately, Defendants were forced to sell the property for $25,000.00 less than Plaintiff's offer  because of an existing obligation to sell to the initial buyer (Dkt. 9, Amended Complaint, PageID.114, ¶ 68).  The facts, as laid out by Plaintiff herself, show that Defendants' legitimate, nondiscriminatory reasons for declining to sell her the Property were not pretextual.

### 2. Plaintiff has Failed to State Plausible Claims under 42 U.S.C. Sections 1981 and 1982, the United States Constitution, and the Michigan Constitution.

Count III of the Amended Complaint asserts claims under 42 U.S.C. Sections 1981 and 1982, the United States Constitution, and the Michigan Constitution.  As discussed above, Plaintiff's fair housing claims under Sections 1981 and 1982

should be dismissed.  As explained below, Plaintiff's Section 1981 claim should also be dismissed because she does not plead facts showing an impaired contractual relationship or that, but for race, she would not have suffered the loss of a legally protected right.  Additionally, her constitutional claims should be dismissed because Defendants are private citizens to whom the federal and state Due Process and Equal Protection clauses do not apply.

Section 1981 grants all individuals in the United States the same rights to make and enforce contracts as "enjoyed by white citizens."  42 U.S.C. § 1981(a). The focus of Section 1981 is "prohibiting racial discrimination in contracting." *House of Providence v. Meyers*, 458 F. Supp. 3d 621, 631 (E.D. Mich. 2020). Plaintiff's Section 1981 claim fails for two reasons.

*First*, "[a]ny claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." Here, though Plaintiff alleges that she and Caramagno "entered into a purchase agreement for the purchase of" the Property (Dkt. 9, Amended Complaint, PageID.108 ¶ 22), the Alleged Agreement itself shows that there was no contractual relationship between Plaintiff and any of the Defendants.  As the Alleged Agreement clearly states, Gottlieb Group was only authorized by Plaintiff to obtain Caramagno's written acceptance of Plaintiff's offer until April 24, 2020 at 5:00 p.m. (Dkt. 9, Ex. B, Alleged Agreement, PageId.143, ¶ 38).  The Alleged Agreement also

14

clearly states, "**TIME IS OF THE ESSENCE WITH RESPECT TO THIS AGREEMENT. TIME LIMITS SHALL BE STRICTLY OBSERVED.**" (*Id.*, ¶ 37). Despite only authorizing Gottlieb Group to obtain Caramagno's written acceptance of her offer until April 24, 2020 at 5:00 p.m., Plaintiff did not sign the Alleged Agreement until April 24, 2020 at 5:26 p.m., and Caramagno did not sign the Alleged Agreement until 5:29 p.m. (*Id.*, ¶ 41).

When presented with these deficiencies in Defendants' Motion to Dismiss, Plaintiff added allegations about the circumstances that led to the signing of the Alleged Agreement in an attempt to convince this Court to rewrite it, but Michigan law does not allow courts to do so. For thirty-three years, Michigan courts applied a doctrine called the rule of reasonable expectations. This approach permitted Judges to examine a written contract, divine the parties' reasonable expectations when entering into the contract and then rewrite the contract accordingly. *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 52 (2003). In 2003, the Michigan Supreme Court put the rule of reasonable expectations to the sword, finding that:

> This approach, where judges divine the parties' reasonable expectations and then rewrite the contract accordingly, is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy.

*Wilkie*, 469 Mich. at 51-52 (noting that free citizens may reach agreements regarding their affairs without government interference and the courts will enforce those

agreements; these principles are "ancient and irrefutable").  The Michigan Supreme Court held that the rule of reasonable expectations clearly has no application to unambiguous contracts, and that a party's alleged "reasonable expectations" should never be utilized to supersede the clear language of a contract.  *Id.* at 60 (a contracting party cannot be said to have reasonably expected something different from the clear language of the contract).

Here, the language of the Alleged Agreement is clear.  It authorized Gottlieb Group to obtain Caramagno's written acceptance of her offer until April 24, 2020 at 5:00 p.m. and both Plaintiff and Caramagno did not sign until after the time period for acceptance expired.  (Dkt. 9, Ex. B, Alleged Agreement, PageId.143, ¶ 41). Michigan law does not allow this Court to rewrite the Alleged Agreement.  Thus, Plaintiff's Section 1981 claim should be dismissed because her Complaint fails to plead facts establishing a contractual relationship.

*Second*, even if the Alleged Agreement establishes a contractual relationship (it does not), to prevail on a Section 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).  Plaintiff states, in wholly conclusory fashion, that the "discriminatory and racist attitudes of the Defendants and/or neighbors or other persons putting pressure on the Defendants is the only reason why all of the actions

forcing Plaintiff away from the purchase of the home had occurred," and "the only reason for all of the threats and the failure to perform is the fact that they became aware that Kiara Thornton is of African American descent."  (Dkt. 9, Amended Complaint, PageID.113, ¶ 37, PageID.114, ¶ 69).  Those allegations, which are not entitled to a presumption of truth, are the only supporting "facts" Plaintiff offers to suggest that, but for race, Defendants would have sold her the Property.  Plaintiff's Section 1981 claim should be dismissed as a result.

Plaintiff also seems to allege claims under the Due Process and Equal Protection Clauses of the United States Constitution and Michigan Constitution. None of those provisions apply here, as they only apply to the federal and state governments, respectively, and Defendants are private citizens.  It is settled law that "[t]he Due Process Clause constrains the federal government, not private citizens." *Al-Saka v. Sessions*, 904 F.3d 427, 433 (6th Cir. 2018) (citing *Pub. Util. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461–62, (1952)).  Similarly, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution plainly states, "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV.  It governs the actions of states, not private citizens.  Plaintiff has not asserted that any of the Defendants are state actors, nor can she.  Thus, her claims under the U.S. Constitution should be dismissed.

Similarly, the Supreme Court of Michigan has held that the "Michigan Constitution's Declaration of Rights provisions," including the equal protection and due process clauses, "have never been interpreted as extending to purely private conduct; these provisions have consistently been interpreted as limited to protection against state action." *Woodland v. Michigan Citizens Lobby*, 378 N.W.2d 337, 344 (Mich. 1985). Consequently, Plaintiff's claims under the Michigan Constitution should be dismissed.

### 3. Plaintiff has Failed to State Plausible Claims for Breach of Contract or Tortious Interference with a Contract or Business Relationship.

Counts IV and V of Plaintiff's Complaint allege that Caramagno breached the Alleged Agreement and that Susan Gottlieb and Gottlieb Group tortiously interfered with the Alleged Agreement and with Plaintiff's business relations with Caramagno and Quicken Loans, which was Plaintiff's mortgage company and employer. (Dkt. 9, Amended Complaint, PageID.120-25, ¶¶ 93-120). There are no facts to support either theory.

### a. Plaintiff has Failed to State a Plausible Claim for Breach of Contract

To state a claim for breach of contract, Plaintiff "must allege 'the existence and terms of a contract, that the defendant breached its terms, and that the breach causes damages to the plaintiff.'" *TRBR, Inc. v. Americredit Fin. Servs., Inc.*, No. 20-11269, 2021 WL 1165599, at *10 (E.D. Mich. Mar. 26, 2021) (quoting *Van*

*Buren Charter Twp. v. Visteon Corp.*, 904 N.W.2d 192, 202 (Mich. Ct. App. 2017)).

In addition, where an offer has expired before it has been accepted, there is no contract because "[a]n offer comes to an end at the expiration of the time given for its acceptance." *Blackburne & Brown Mortg. Co. v. Ziomek*, 264 Mich. App. 615, 626, 692 N.W.2d 388, 395 (2004) (quoting *Pakideh v. Franklin Commercial Mortgage Group, Inc.*, 213 Mich. App. 636, 640–641, 540 N.W.2d 777, 780 (1995)). Furthermore, "[a]n offeree cannot accept, either through words or deeds, an offer that has lapsed," and an "offeror cannot waive the lapse of his offer simply by choosing to disregard it." *Id.*

Here, as discussed above, Plaintiff has failed to allege the existence of a contract because she only authorized Gottlieb Group to obtain Caramagno's written acceptance of her offer until April 24, 2020 at 5:00 p.m. and Plaintiff did not sign the Alleged Agreement until after the time period for acceptance expired. (Dkt. 9, Ex. B, Alleged Agreement, PageID.143, ¶¶ 37, 40-41). Because the offer had lapsed prior to acceptance, no contract existed. *See Blackburne*, 264 Mich. App. at 626. Nor can either party waive the lapse simply by choosing to disregard it. *Id.* at 396. And, as discussed above, this Court cannot rewrite the Alleged Agreement. *Wilkie*, 469 Mich. at 51-52.

Plaintiff's allegation that "[t]he failure to adjust the time limitation contained in the first version of the document was a mutual mistake" (Dkt. 9, Amended

Complaint, PageID.123, ¶ 103) does not allow the Court to rewrite the Alleged Agreement. Under Michigan law, mutual mistake is a basis for *rescinding* contracts, not rewriting them. *See Bank of Am., NA v. Fid. Nat. Title Ins. Co.*, 316 Mich. App. 480, 501, 892 N.W.2d 467, 480 (2016) ("A contract may also be rescinded on the basis of a mutual mistake."). For all of these reasons, Plaintiff's breach of contract claim should be dismissed.

### b. Plaintiff has Failed to State Plausible Claims for Tortious Interference with a Contract or Business Relationship

Plaintiff's tortious interference of contract claims should also be dismissed. Under Michigan law, "[t]he elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Gucwa v. Lawley*, No. 15-10815, 2017 WL 282045, at *5 (E.D. Mich. Jan. 23, 2017) (quoting *Knight Enterprises v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013). Here, Plaintiff has not pleaded the existence of a contract, as discussed above, and thus, she has not pleaded tortious interference with a contract.

Finally, Plaintiff's tortious interference of business relationship claims should be dismissed. In Michigan, to establish a claim for tortious interference of a business relationship, a plaintiff must show: (1) the existence of a valid business relationship or expectancy; (2) defendant's knowledge of the relationship; (3) intentional interference by the defendant; and (4) damages resulting from that interference.

20

*Chambers v. City of Detroit*, 786 F. Supp. 2d 1253, 1274 (E.D. Mich. 2011) (quoting

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App.

83, 90 (2005)).  The plaintiff must also show that the defendant's interference was

"'an act that is per se wrongful' or 'a lawful act with malice and that is unjustified

in law.'"  *Id.* (quoting *Health Call*, 268 Mich. App. at 85-86).   In addition,

"[i]mproper conduct is a subset of wrongful acts and includes illegal, unethical, or

fraudulent activities."  *Id.*  Further, "[w]here the defendant's actions were motivated

by legitimate business reasons, its actions would not constitute improper motive or

interference."  *Id.* (quoting *Mino v. Clio Sch. Dist.*, 255 Mich. App. 60, 78, 661

N.W.2d 586 (2003)).  Plaintiff alleges that Gottlieb and Gottlieb Group interfered

with her business relationships with Caramagno and Quicken Loans.  Each theory

lacks merit.

Plaintiff does not plead facts showing that Gottlieb and Gottlieb Group

interfered with her expected business relationship with Caramagno because her

Complaint shows that Gottlieb and Gottlieb Group's actions were motivated by

legitimate business reasons.  Plaintiff's Amended Complaint and the exhibits thereto

show that Susan Gottlieb and Gottlieb Group's actions regarding Plaintiff's expected

business relationship (if any) with Caramagno were motivated by the legitimate

business reason of honoring a purchase agreement with another buyer that predated

the Alleged Agreement.  (Dkt. 9, Ex. E, Apr. 28-30, 2020 Emails between Plaintiff

and Gottlieb, PageID.151-52).

Further, Plaintiff does not adequately plead facts showing that Gottlieb and Gottlieb Group actually interfered with Plaintiff's business relationship with Quicken Loans, which was Plaintiff's employer and mortgage company.  (*See* Dkt. 9, Amended Complaint, PageID.106, ¶ 14).   Moreover, in addition to the legitimate business reasons for Susan Gottlieb and Gottlieb Group's actions, Plaintiff has no facts showing any damages resulting from any alleged interference with her business relationship with Quicken Loans.   For example, Plaintiff has not pleaded that Quicken Loans disciplined her or terminated her employment because of Susan Gottlieb's alleged contact with Quicken Loans, nor has she pleaded that Quicken Loans declined to grant Plaintiff a mortgage.   As a result, Plaintiff's claim for tortious interference with her business relationship with Quicken Loans should be dismissed.

### 4.  Plaintiff has Failed to State Plausible Claims for Fraudulent Misrepresentation

Count VI of the Amended Complaint alleges a claim for Misrepresentation/Fraud.   To establish a claim for fraudulent misrepresentation under Michigan law, Plaintiff must plead that: (1) Defendants made a material misrepresentation; (2) it was false; (3) when Defendants made it, they knew it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) Defendants made it with the intention that it should be acted upon by Plaintiff;

(5) Plaintiff acted in reliance upon it; and (6) Plaintiff thereby suffered injury. *Tocco v. Richman Greer Pro. Ass'n*, 912 F. Supp. 2d 494, 516 (E.D. Mich. 2012) (citing *Lawrence M. Clarke, Inc. v. Richco Constr., Inc.*, 489 Mich. 265, 803 N.W.2d 151, 162 (2011)). "Additionally, a party must state "with particularity" the circumstances constituting the fraud," which "means that the complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Cruz v. Cap. One, N.A.*, 192 F. Supp. 3d 832, 839 (E.D. Mich. 2016) (quotation marks and citation omitted).

Plaintiff alleges that Defendants made a material misrepresentation by representing that there were no other pending claims on the Property, then later representing that there was an initial buyer. (Dkt. 9, Amended Complaint, PageID.125-26, ¶ 123-24). However, Plaintiff has failed to plead facts showing that when Defendants made those representations, they knew them to be false or made them recklessly, without knowledge of their truth as a positive assertion. In fact, the facts in the Amended Complaint show the opposite to be true. The Amended Complaint shows that Defendants initially believed that all initial offers had fallen through (*Id.*, PageID.108, ¶ 24), but then, Defendants realized that the initial prospective purchaser, who had communicated to Defendants that they did not want to buy the Property, had never signed a termination of their offer, and Defendants

needed a signature terminating that offer before they could proceed with Plaintiff (*Id.*, PageID.109, ¶ 33-34). Ultimately, Defendants could not sell the Property to two parties, and because the initial buyer did not sign the cancellation/release of the sales agreement, Defendants could not proceed with the sale to Plaintiff at that time, something Plaintiff was advised about immediately (Dkt. 9, Ex. E, Apr. 28-30, 2020 Emails between Plaintiff and Gottlieb, PageID.151-52). Moreover, Plaintiffs do not establish that she detrimentally relied on any misrepresentation or that she suffered any injury. Plaintiff has not adequately pleaded a claim for fraudulent misrepresentation, much less with particularity. These facts do not show that Defendants committed fraud. Count VI of the Amended Complaint should be dismissed.

### IV.    Conclusion

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's First Amended Complaint, with prejudice.

Respectfully submitted,

*/s/Brian M. Schwartz*
Brian M. Schwartz (P69018)
Attorney for Defendants
150 West Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420
schwartzb@millercanfield.com

24

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULES**

I, Brian M. Schwartz, certify that this document complies with Local Rule 5.1(a), including:  double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

*/s/Brian M. Schwartz*
Brian M. Schwartz (P69018)
Attorney for Defendants
150 West Jefferson, Suite 2500
Detroit, MI  48226
(313) 963-6420
schwartzb@millercanfield.com

25

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

/s/Brian M. Schwartz
Brian M. Schwartz (P69018)
Attorney for Defendants
150 West Jefferson, Suite 2500
Detroit, MI  48226
(313) 963-6420
schwartzb@millercanfield.com

26