## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

KIARA THORNTON
              Plaintiff

vs.

SAM CARAMAGNO, SUSAN GOTTLIEB, and
GOOD 4 YOUR SOUL, LLC d/b/a GOTTLIEB
GROUP REAL ESTATE
              Defendants.

Case No:  21-10858
Hon.   Mark A. Goldsmith
Magistrate Judge
Anthony P. Patti

/

DUNLAP & KUCMIERZ, PLLC
Rod A. Dunlap (P37558)
Jason J. Kucmierz (P63842)
Attorneys for Plaintiff
37000 Grand River Ave., Ste 230
Farmington Hills, MI 48335
(248) 474-4000
info@dk-lawoffice.com

MILLER CANFIELD PADDOCK & STONE PLLC
Brian M. Schwartz (P69018)
Schuyler Ferguson (Illinois ARDC No. 6325615)
Attorneys for Defendants
150 West Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420
schwartz@millercanfield.com
ferguson@millercanfield.com

/

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

NOW COMES the Plaintiff, Kiara Thornton, by and through her attorneys, Dunlap & Kucmierz, PLLC, and for her Response to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint states unto this Honorable Court as follows:

1. Plaintiff admits she filed her initial Complaint on or about October 12, 2020.

2. Plaintiff admits Defendants removed Plaintiff's Complaint to this Court on or about April 16, 2021.

3. Plaintiff admits that on April 20, 2021 Defendants filed their Motion to Dismiss Plaintiff's Complaint, that the Court then issued its Order allowing Plaintiff to file an amended Complaint, which Amended Complaint was filed with the Court on May 18, 2021. Plaintiff further admits that the Court then issued its Order denying Defendants' Motion.

4. Plaintiff denies for the reason she does not rely on "sparse" facts as alleged by Defendants, but relies on the detailed factual timeline of events and factual allegations of Defendants' behavior and actions as contained in her Amended Complaint and further states her Amended Complaint sets forth context and facts that go far beyond formulaic recitations of her stated causes of action, which are plausible on their face.

5. Plaintiff admits that Plaintiff's counsel denied concurrence with Defendants' counsel's motion.

6. Plaintiff admits that Defendants' counsel's Motion appears to conform to local rule requirements.

WHEREFORE, Plaintiff prays that this Court deny Defendants' Motion.

DUNLAP & KUCMIERZ, PLLC


/s/ Rod A. Dunlap

ROD A. DUNLAP (P37558)
JASON J. KUCMIERZ (P63842)
Attorneys for Plaintiff
37000 Grand River Ave., Ste. 230
Farmington Hills, MI  48335
(248) 474-4000

Dated: 6/21/2021

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

I, Rod A. Dunlap, certify that this document complies with Local Rule 5.1(a) and Local
Rule 7.1(d)(3).

/s/ Rod A. Dunlap

ROD A. DUNLAP (P37558)
JASON J. KUCMIERZ (P63842)
Attorneys for Plaintiff
37000 Grand River Ave., Ste. 230
Farmington Hills, MI  48335
(248) 474-4000

Dated: 6/21/2021


## CERTIFICATE OF SERVICE


I certify that on June 21, 2021, I electronically filed the foregoing document, together
with Exhibit A with the Clerk of the Court using the ECF system which will send notification of
such filing to all attorneys of record.

/s/ Amanda Gagnon

Amanda Gagnon, Legal Assistant

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KIARA THORNTON
          Plaintiff

                                    Case No: 21-10858
     vs.                            Hon.  Mark A. Goldsmith
                                      Magistrate Judge
                                    Anthony P. Patti

SAM CARAMAGNO, SUSAN GOTTLIEB, and
GOOD 4 YOUR SOUL, LLC d/b/a GOTTLIEB
GROUP REAL ESTATE
                 Defendants.
_____/

DUNLAP & KUCMIERZ, PLLC
Rod A. Dunlap (P37558)
Jason J. Kucmierz (P63842)
Attorneys for Plaintiff
37000 Grand River Ave., Ste 230
Farmington Hills, MI 48335
(248) 474-4000
info@dk-lawoffice.com

MILLER CANFIELD PADDOCK & STONE PLLC
Brian M. Schwartz (P69018)
Schuyler Ferguson (Illinois ARDC No. 6325615)
Attorneys for Defendants
150 West Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420
schwartz@millercanfield.com
ferguson@millercanfield.com
_____/

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**

**ORAL ARGUMENT REQUESTED**

1

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................3,4

CONTROLLING OR MOST APPROPRIATE AUTHORITY       ..................4

RESPONSE TO STATEMENT OF ISSUES PRESENTED............................5

I. INTRODUCTION................................................................................6,7

II. STATEMENT OF FACTS..................................................................7-12

III. ARGUMENT....................................................................................12-22

        A. Standard of Review......................................................12, 13

        B. Plaintiffs Discrimination Claims are plausible......................13-19

        C. Plaintiff's Claims under 42 USC 1981, 1982, the U S
        Constitution and the Michigan Constitution are plausible..............19

        D. Plaintiff's Claims for Breach of Contract and Tortious
        Interference with a Contract or Business Relationship
        are plausible......................................................................19-21

        E. Plaintiff's Claim for Fraudulent Misrepresentation
        are plausible......................................................................21,22

CONCLUSION......................................................................................22,23

2

Table of Authorities

Cases                                                             Page

*Bell Atlantic Corp. v Twombly*, 550 U.S. 544 (2007)............................12,13

*Ashcroft v Iqbal*, 556 U. S. 662 (2009)…………………………………12,13,14

*Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010)............................12

*Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 704 (6th Cir. 2009)……...12

*Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*,
648 F.3d 452, 458 (6th Cir. 2011)……………………………………....14

*Tellabs, Inc. v. Makor*, 551 U.S. 308, 314 (2007)……………………....14

*16630 Southfield L.P. v. Flagstar Bank, F.S.B*, 727 F.3d 502
   (6th Cir.2013)………………………………………………...13,15

*Center for Bio-Ethical Reform v Napolitano*, 648 F 3d 365, 373
   (6th Cir.2011)………………………………………………...13

*Mencer v Princeton Square Apartments*, 228 F.3d 631 (6th Cir.2000)……….17,18

*Kinde v Goschinski*, No 09-10131, 2010 WL 779288, at 6*
(E.D. Mich. Mar 8, 2010)……………………………………………18

*Jackson v Whitehouse*, No. 92-CV-74725-DT, 1993 WL 1624960 at *5
(E.D. Mich. Nov 23, 1993)……………………………………………18

*Blackburne & Brown Mortg. Co. v Ziomek*, 692 N.W.2d 388
(Mich Ct App 2004)…………………………………………………20

*Chamberlain v. Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683, 701
(E.D. Mich. 2010)……………………………………………………22

*Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*,
485 F.3d 840, 848 (6th Cir. 2007)……………………………………22

Statutes

Elliott-Larsen Act, (MCL 37.2101 et seq)…………………………………19

Fair Housing Act, (42 USC Sec. 3601, et seq)……………………………19

3

42 USC 1981.................................................................19

42 USC 1982.................................................................19

15 U.S.C. § 78u-4(b)(2).................................................14

<u>Court Rules</u>

Federal Rule of Civil Procedure 12(b)(6)...........................12,23

Federal Rule of Civil Procedure Rule 8(a)..........................14

Federal Rule of Civil Procedure Rule 9(b).........................21

Federal Rule of Civil Procedure Rule 56............................23

<u>Other Authorities</u>

Michigan Constitution ...................................................19

United States Constitution ..............................................19

<u>Controlling or Most Appropriate Authority</u>

*Bell Atlantic Corp. v Twombly*, 550 U.S. 544 (2007)

*Ashcroft v Iqbal*, 556 U. S. 662 (2009)

*Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010)

4

## Response to Statement of Issues Presented

**I.**    Should Plaintiff's claims for violations of the Elliott- Larsen Civil Rights Act be dismissed for failure to state a claim? **Plaintiff answers NO.**

**II.**    Should Plaintiff's claims for violations of the Fair Housing Act be dismissed for failure to state a claim? **Plaintiff answers NO.**

**III.**    Should Plaintiff's claims under provisions of 42 USC 1981 and 1982 be dismissed for failure to state a claim? **Plaintiff answers NO.**

**IV.**    Should Plaintiff's claims under provisions of the Michigan Constitution and U.S. Constitution be dismissed for failure to state a claim? **Plaintiff answers NO.**

**V.**    Should Plaintiff's claim for Breach of Contract be dismissed for failure to state a claim? **Plaintiff answers NO.**

**VI.**    Should Plaintiff's claim for Tortious Interference with her Contract with Defendant Caramagno be dismissed for failure to state a claim? **Plaintiff answers NO.**

**VII.**    Should Plaintiff's claim for Tortious Interference with her Business Relationship with Defendant Caramagno and Quicken Loans ? **Plaintiff answers NO.**

**VIII.**    Should Plaintiff's claims for Fraudulent Misrepresentations be dismissed for failure to state a claim? **Plaintiff answers NO.**

## I. Introduction

This case involves property located at 316 Hillcrest Ave in Grosse Pointe Farms, Michigan ("the Property"). At all times material to this action, Defendant Sam Caramagno was the owner of the Property, and Plaintiff Kiara Thornton was a purchaser of the Property. Defendant Susan Gottlieb is Sam Caramagno's mother, and is an associate broker for Defendant Gottlieb Group. Plaintiff and Defendants Gottlieb, and Caramagno, executed a Buy/Sell Agreement prepared by Gottlieb on April 24, 2020 (Plaintiff's Exhibit B, ECF No. 9, Pages 34-40).

Plaintiff is of African-American descent, and brings claims for breaches of the Elliott-Larsen Act, the Fair Housing Act, 42 USC 1981 and 1982, the Michigan Constitution and the U.S. Constitution. Defendants, in the Introduction to their Brief, aver that the parties never met during the pandemic, so there is no plausible way Plaintiff can support her claim for discrimination. Notably, *nowhere* in the Defendants' Brief do Defendants actually state that they did not know Plaintiff's race. It should be obvious that there are many other available ways to ascertain a person's race besides a face to face meeting, i.e. a Google search, social media, or communications with third parties to name a few. Indeed, a cursory Google search for her name in Michigan yields a picture of Plaintiff (**Exhibit A** attached hereto) Plaintiff also brings claims for breach of contract, which Defendants wrongfully assert is invalid. Plaintiff's additional claims are for Tortious Interference with a Contract and Business Relationship and for Misrepresentation/Fraud.

Defendant erroneously state that "the facts show there was another buyer whose purchase agreement predated the Alleged Agreement and to whom the Defendants were obligated to sell the property"-however, *the facts* do **not** indicate this to be true, and Defendants have refused to

provide any documentation in support of this contention to date, despite being requested to do so. It is a mere recitation of what Defendant Gottlieb stated, and until evidence to support her statement is produced, the existence of another buyer to whom Defendants were obligated to sell remains a *question* of fact.

Defendants' current Motion is practically identical to their first Motion to Dismiss, and Defendants continue to make statements that Plaintiff's Amended Complaint is "formulaic" and "conclusory", despite the extensive timeline details and context provided in Plaintiff's First Amended Complaint.

## II. Statement of Facts

Defendants continue to aver that Plaintiff provides only "sparse" facts. However, the facts of this case, as set forth in Plaintiff's First Amended Complaint (Court's Docket 9, Pgs 106-113), are set forth in detail within the first 62 paragraphs and inform the Court that:

- When Plaintiff first inquired as to the availability of the Property on April 22, 2020, Gottlieb informed her that it was available.

- The next day Plaintiff sent an Offer letter to Gottlieb.

- Gottlieb stated that she would prefer to write up a Buy/Sell Agreement and requested a Mortgage Pre-Approval letter from Plaintiff, which Plaintiff provided.

- At 3:23 a.m. on April 24, 2020, Gottlieb uploaded an Agency Disclosure form, a Buy/Sell Agreement, Anti-Fraud Disclosure Statement, Lead Based Paint Disclosure and Pamphlet and Seller's Disclosure Form to DotLoop and forwarded them to Plaintiff.

- The Buy/Sell Agreement originally sent by Gottlieb at 3:23 a.m. was signed by Defendant Caramagno and by Gottlieb. That document did include the statement that "Buyer gives Broker until 4/24/2020 at 5:00 p.m. to obtain Seller's written acceptance of Buyer's Offer".

- Throughout the day on April 24, 2020 communications between Gottlieb and Plaintiff ensued concerning revisions and clarifications to the Buy/Sell Agreement.

7

- Gottlieb amended the Buy/Sell Agreement to include revisions and clarifications and forwarded it to Plaintiff for signature at 5:19 p.m. on April 24, 2020.

- Plaintiff signed the revised Agreement at 5:26 p.m. Seller Caramagno signed at 5:29 p.m.

**The fact** that, as of April 24, 2020, Defendants were eager to effect the sale to Plaintiff is clearly demonstrated by Defendant Gottlieb's willingness to prepare and upload the requisite paperwork at 3:23 in the morning, communicate all day on April 24, 2020 with Plaintiff, make clarifications and requested revisions to the Buy/Sell Agreement, and forward the document back to Plaintiff and Caaramagno for signature. **The fact** that Gottlieb did not send the finalized document out for signature until 5:19 p.m. on April 24, 2020, and **the fact** that both Plaintiff and Defendant Caramagno both signed it immediately is evidence that all parties intended to proceed with the sale on the terms of the finalized Buy/Sell Agreement.

**The fact** that the contract prepared by Defendant Gottlieb, in Paragraph 22B of that document, contains this representation:

> "Seller represents to the best of Seller's knowledge and belief that: …B. There {is}no pending or threatened litigation, administrative action, **or claim** relating to the property." (emphasis added),

is clearly pled in Plaintiff's Amended Complaint, Paragraph 19.

**The fact** that the same contract, in Paragraph 22G of that document, contains this representation:

> "Seller represents to the best of Seller's knowledge and belief that: …G. After the date hereof, **the Seller will not enter into any Agreement pertaining to the property** or any modification of, or release from, an existing lease or rental agreement **without the prior, written consent of Buyer"** (emphasis added),

is clearly pled in Plaintiff's Amended Complaint, Paragraph 20.

**The fact** that the same contract, in Paragraph 35 of that document, contains this remedy:

8

"If Seller defaults, **Buyer may enforce this agreement**, or may demand return of the earnest money and pursue Buyer's remedies." (emphasis added),

is also clearly pled in Plaintiff's Amended Complaint, Paragraph 21.

This means that there is written evidence prepared by both Defendants that Caramagno and Gottlieb admit the following:

1. There is no prior offer because it would be a claim relating to the property.

2. Caramagno and Gottlieb will not enter into another Agreement without the written consent of Thornton.

3. Caramagno and Gottlieb agree that if Caramagno defaults (i.e. won't sell the property or lied about other claims) then Thornton may elect to enforce the Agreement (Specific Performance).

Plaintiff's claim that Defendants did not have a prior offer is supported by a contract Defendant Gottlieb drafted and both Defendants Gottlieb and Caramagno signed.

Plaintiff's claim that she did not have to sign the Release demanded by Defendant Gottlieb is supported by a contract Defendant Gottlieb drafted and both Defendants Gottlieb and Caramagno signed.

Plaintiff's claim that she has a right to specific performance is supported by a contract Defendant Gottlieb drafted both Defendants Gottlieb and Caramagno signed.

Further evidence of the parties' intention to proceed is borne out by **the fact** that during the next three days the parties moved with all due speed to conclude this sale:

• Plaintiff paid an earnest money deposit of $1,000.00.

• Dates for appraisal and inspection were arranged.

Plaintiff drove to the Property with her mother and sister to show them the exterior of the property. A neighbor observed them at that time.

9

On the afternoon of April 28, 2020, **the fact** is that Gottlieb suddenly reversed course and her prior eagerness to conclude this sale completely evaporated. She sent a text asking Plaintiff to call her. During the call Gottlieb informed Plaintiff that a prior prospective purchaser had not signed off on a termination of their offer and the return of their deposit and that Gottlieb could not sell to Plaintiff until such signature was received. <u>This was **the first** occasion Gottlieb raised **any** impediment to the sale of the Property to Plaintiff</u>. Gottlieb also told Plaintiff the prior purchaser did not want the house, but that she would be more comfortable if Plaintiff signed a termination of Plaintiff's contract and for release of earnest money deposit.

Plaintiff did not sign the termination agreement sent to her by Gottlieb, did not withdraw from the sale, and wanted to proceed with the home inspection and appraisal.

On April 30, 2020, Gottlieb threatened to call Plaintiff's employer if Plaintiff did not sign the termination agreement, and Gottlieb did so. Gottlieb informed Quicken Loans (Plaintiff's employer and the mortgage broker for the sale), that the sale was canceled and that she had a Termination Agreement signed by Plaintiff, which was a blatant lie. Gottlieb instructed Quicken Loans to cancel the appraisal, and requested contact information for Plaintiff's supervisor, which was not provided. Gottlieb did however contact the loan processor's supervisor and left an irate and abusive message. Plaintiff's attorney sent an email to Gottlieb that afternoon. (Plaintiff's Exhibit F, ECF No. 9, Pages 52-53).

On May 1, 2020, Plaintiff received an automated message that the appraisal was re-scheduled for May 2, 2020.

On May 4, 2020, the escrow agent for Plaintiff's earnest money deposit, Amrock, informed Plaintiff that her check had been applied to the transaction and that no communication

10

had been received from Gottlieb since the provision of Amrock's receipt. Later that day Gottlieb

informs Amrock that the transaction is canceled and that the sales agreement was not valid.

On May 5, 2020, Plaintiff's attorney again contacted Gottlieb via email and requested

documentation to support the contention that there was an agreement with a prior purchaser

(Plaintiff's Exhibit G, ECF No. 9, Pages 54-56). No such documentation was provided by

Gottlieb in response, nor has it ever been provided to this day.

On May 6, 2020 the property was still listed as active on 6 different websites.

It appears from public records on the Wayne County Register of Deeds website that a

Warranty Deed was executed for the sale of the Property on May 12, 2020 to a third party for

$25,000.00 less than the price stipulated in the Buy/Sell Agreement between Plaintiff and

Defendants.

On June 4, 2020 Plaintiff's attorney sent correspondence to Defendants demanding

specific performance on the contract, documenting Gottlieb's failure to provide requested

information, and concluding that the sale did not proceed due to violations of the Elliott-Larsen

Civil Rights Act on the basis of discrimination  because Plaintiff is African-American (Plaintiff's

Exhibit H, ECF No. 9, Pages 57-59).

Given the abrupt reversal in the behavior of the Defendants (going from completely

gungho and full speed ahead on the sale to a full stop reversal after accepting the Buy/Sell

agreement, accepting Plaintiff's earnest money and scheduling inspection and appraisal), the

contradictory excuses given for their failure to sell to Plaintiff (first proclaiming that a previously

undisclosed prior purchaser had priority, then claiming the contract was invalid due to the time

of final signature), the falsehoods told to third parties (that Plaintiff had signed a termination

agreement), and finally, closing with a third party for a price $25,000.00 less than what Plaintiff

11

was willing to pay for the Property, the conclusion that the sale to Plaintiff did not proceed due to Plaintiff's race is wholly plausible. Gottlieb and Caramagno have never denied this conclusion to this day, and they don't *actually* deny it in their Brief either.

## III. Argument

A. **Standard of Review**:

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "Courts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief." *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).

Defendants' arguments rely heavily on excerpts from the decisions in *Bell Atlantic Corp. v Twombly*, 550 U.S. 544 (2007) and *Ashcroft v Iqbal*, 556 U. S. 662 (2009). While these decisions establish that plaintiffs must state "plausible" grounds for relief, the decisions do not alter the basic rule that plaintiffs must plead only the basic elements of a claim, not develop all of the facts necessary to support the claim, *Ashcroft v Iqbal*, 556 U. S. 662 (2009). Nor do *Iqbal* and *Twombly* displace the general rule that to construe all reasonable inferences, including those related to a plaintiff's legal theory, in favor of the claimants. See *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 704 (6th Cir. 2009). So long as a Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 129 S. Ct. at 1949, a plaintiff's claims must survive a motion to dismiss.

*Iqbal*'s discussion of *Twombly* recognizes that determining whether well-pleaded facts plausibly suggest an entitlement to relief is a "context-specific task" that calls upon a reviewing court "to draw on its judicial experience and common sense." See *id.* at 15. Further, the Supreme

12

Court's analyses in *Iqbal* and *Twombly* permit the trial court to look beyond the complaint to the surrounding factual context—whether that be to recognize the prevalence of lawful parallel pricing (*Twombly*) or the events of the 9/11 terrorist attacks (*Iqbal*). However, the Court drew no clear boundary as to when such reliance extends too far and, like *Twombly* before it, provides little guidance for district courts attempting to apply this test in dissimilar circumstances, other than that courts should take a "common sense" approach.

Defendants incorrectly apply the decision in *16630 Southfield L.P. v. Flagstar Bank, F.S.B*, 727 F.3d 502 (6th Cir.2013), referencing allegations made "upon information and belief", which they contend should be disregarded. There are no allegations made "upon information and belief" in Plaintiff's Amended Complaint.

Defendants invocation of a partial selective quote from *Center for Bio-Ethical Reform v Napolitano*, 648 F 3d 365, 373 (6th Cir.2011) Page 7 of its Brief: "a complaint….that does not provide the "when, where, in what or by whom" to support conclusory allegations, fails to state a claim", does not appear relevant to the case at bar. The *Center* Court decision was quoting the lower Court's opinion in *Iqbal:* "Without any plausible statements as to when, where, in what, or by whom such a designation was made, this allegation amounts to a "naked assertion[ ] devoid of further factual enhancement" that is not entitled to a presumption of truth. *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks, citations, and alterations omitted).

The "when, where, in what or by whom" is clearly set forth in Plaintiff's Amended Complaint.

## B. Plaintiffs Discrimination Claims are plausible.

It is important to note that the Supreme Court's deliberations and ultimate decision in *Iqbal* concerned discrimination claims against highly placed government officials (John Ashcroft

13

and Robert Mueller) who were the Petitioners in that case, and not with respect to persons who had direct contact with Mr. Iqbal. Here, Plaintiff Thornton makes no allegations regarding any ongoing policy which originated with Defendants against persons of a particular class: her Complaint is limited to the express behavior and actions of the Defendants against her.

It is also important to note that Defendants, in their Brief, mischaracterize Plaintiff's recitals of what she *was told* by Defendant Gottlieb as somehow establishing that Defendant Gottlieb's statements were facts pled by Plaintiff. Whether there was actually another buyer who had priority, whether the person who actually was sold the property even had a previously dated purchase agreement with Defendants is a question of fact, and Plaintiff Thornton categorically rejects Defendants' premise in this regard. Furthermore, the proposition that there was no other prior Purchase Agreement is based on a contract drafted by one Defendant and signed by the other.

Defendants attempt to convince the Court that because on April 28, 2020, Defendant Gottlieb *told* Plaintiff there was an earlier offer that had priority, Defendants have established that there was a more plausible explanation for their behavior than discrimination.

"…To be sure, the mere existence of more likely alternative explanations does not automatically entitle a defendant to dismissal. See *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011) ("Often, defendants' conduct has several plausible explanations. Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage."); see also *Iqbal*, 556 U.S. at 678. Civil Rule 8(a) is not 15 U.S.C. § 78u-4(b)(2), which requires the inference of fraudulent intent in securities fraud cases to be "at least as compelling as any opposing inference." *Tellabs, Inc. v. Makor*, 551 U.S. 308, 314 (2007). Thus, if a plaintiff's claim is plausible, the availability of other explanations—even more

14

likely explanations—does not bar the door to discovery. But you can't assess the plausibility of an inference in a vacuum. The reasonableness of one explanation for an incident depends, in part, on the strength of competing explanations...", quoting *16630 Southfield L.P. v. Flagstar Bank, F.S.B,* 727 F.3d 502 (6th Cir.2013).

Plaintiff does not ask this Court to assess plausibility in a vacuum, and offers a detailed sequential and factual timeline of events as they occurred of Defendants' conduct. If Defendant Gottlieb had not represented that the property was available, had Defendant Gottlieb not prepared and signed a contract which stated there were no prior claims on the Property, had Defendant Caramagno also not signed the contract prepared by Defendant Gottlieb, had Defendant Gottlieb not quickly provided clarifications and effected revisions requested by Plaintiff to the contract, had Defendants not rushed to satisfy all requirements of the contract (providing all disclosure documents required by law, obtaining pre-approval for Plaintiff's loan amount for the Property, securing Plaintiff's earnest money deposit, setting appointments for appraisals and inspection) and then  suddenly reversing course four days later, then perhaps racial discrimination may not have been a plausible inference. But taking the totality of Defendants' actions as set forth in Plaintiff's Amended Complaint (Paragraphs 1 through 62 which are fully incorporated into the Counts which follow Paragraph 62) into consideration, it is absolutely reasonable to conclude that racial discrimination is a plausible explanation and motivation for Defendants' actions.

Additionally, Gottlieb then took her disdain for Thornton to another level when she threatened to contact her employer to coerce her into signing a Termination Agreement.  Then Gottlieb actually contacted the employer in a desperate attempt to get Thornton to sign a Termination Agreement of a Purchase Agreement.  Later, the Defendants change their position,

15

and absurdly claim that there never was a Purchase Agreement with Thornton. If this is the case, then why was Gottlieb so desperate to get Thornton to terminate it? Why did Gottlieb draft and Caramagno sign an Agreement which promised there was no such prior claim?

In order to support their claim that Plaintiff has no plausible position, Defendants are asking this Court to ignore some facts while adopting others. The language of the Purchase Agreement drafted and signed by the Defendants is to be ignored while the parol evidence of a prior Agreement never disclosed before is to be adopted. The Agreement drafted and signed by the Defendants for which Gottlieb feverishly attacked Thornton and Thornton's employer to terminate is to be ignored. The fact that this Agreement was ratified and relied upon for 4 days until the sudden reversal is to be ignored. In its place, Defendants insist that there never was an Agreement. The fact-finding which Defendants expect this Court to do is anathema to anything allowed for a Motion to Dismiss where the claim is that there is a failure to state a claim. This is even more true when it is the word and actions of the moving parties which support both sides of the argument.

Defendants ask this Honorable Court to apply this same tortured logic to the other racial discrimination facts in this case. In addition to the above assumptions, this Court is asked to ignore that Defendants never mentioned a prior Agreement until after Kiara Thornton drove up to the premises while the state and nation was conducting all business remotely. The Court is supposed to ignore the fact that Gottlieb went to the disrespectful and outrageous level of threatening Thornton's employer to get her to sign a Termination Agreement. The Court is requested to ignore the fact that when Thornton refused to sign the Termination Agreement, Gottlieb would again reverse course and claim that there never was an Agreement. The Court is asked to ignore that rather than acknowledging the specific performance option, Defendants

16

would insist that everyone ignore it. The Court is asked to ignore the fact that despite multiple requests for proof of this suddenly appearing purchase agreement, it was never provided. The Court is asked to ignore that Defendants also never provided any of the communications leading up to the suddenly appearing Purchase Agreement despite multiple requests from Thornton's counsel. The Court is also supposed to ignore the fact that Defendants have fought against a solid Purchase Agreement in order to sell the property to another person for less money. The Court is asked to ignore the fact that after being accused of racial discrimination last year, Defendants still don't deny it. The Court is to also expect that this is the way that Gottlieb and Caramagno would treat a white client, and that there is nothing discriminatory here. In fact, there is no question that both Defendants acquiesce to this same audacious position shamelessly since they have no problem being represented by the same counsel while they have humiliated and tirelessly fought against Thornton for daring not to accept their latest changing version of what they say is true.

Defendants contend that Plaintiff has failed to establish a prima facie case for racial discrimination in a fair housing case, citing a quote from *Mencer v Princeton Square Apartments,* 228 F.3d 631 (6th Cir.2000) which is not contained in the appellate opinion. The *Mencer* decision did include the following quote regarding the elements of a prima facie case in housing discrimination as:

"(1) that he or she is a member of a racial minority, (2) that he or she applied for and was qualified to rent or purchase certain property or housing, (3) that he or she was rejected, and (4) that the housing or rental property remained available thereafter."

17

It should also be noted that the *Mencer* case went to trial and was not dismissed by Motion for failure to state a claim. It was determined by the trial court that the Mencers were rejected as tenants for financial, and not discriminatory, reasons.

Defendants state that "Plaintiff does not assert anywhere that Defendants knew she was an African American", but then point out that the statement "became aware that Kiara Thornton is of African American descent" is contained in Plaintiff's Amended Complaint. The Defendants are certainly aware now that Kiara Thornton is black-what is relevant is *when* did they know it?

Defendants quote *Kinde v Goschinski*, No 09-10131, 2010 WL 779288, at 6* (E.D. Mich. Mar 8, 2010) (citing *Jackson v Whitehouse,* No. 92-CV-74725-DT, 1993 WL 1624960 at *5 (E.D. Mich. Nov 23, 1993)), stating "a *prima facie* case of racial discrimination inherently includes a requirement that the defendants knew that Plaintiffs were members of a racial minority." Both the *Kinde* and *Whitehouse* decisions were rendered *after* Defendants had filed Answers and *after* discovery.

Defendants contend that Plaintiff's Amended Complaint fails to establish that the housing or rental property remained available thereafter, by claiming that Plaintiff's exhibits show that "the Property was unavailable before she tried to buy it because a previous buyer declined to sign a release of a sales agreement that predated the Alleged Agreement". The exhibits are **not** evidence that such a previous buyer actually existed, or that the Property was unavailable before Plaintiff tried to buy it, as Defendants state. Rather the exhibits bear out what Plaintiff *was told*: not what was actually ***true***.

Defendants have created a question of fact as to whether or not Defendants' reason for not selling the Property to Plaintiff was pretexual, because Defendants had every opportunity

18

prior to the initiation of this lawsuit, and were requested to provide documentation to support

their statements that there was another buyer with priority, but they refused to do so.

**C. Plaintiff's Claims under 42 USC 1981, 1982, the U S Constitution and the Michigan Constitution are plausible.**

All of Plaintiff's arguments in support of her plausible claims under the Elliott-Larsen

Act and the Fair Housing Act presented herein also support her claims under 42 USC 1981,

1982, the U.S. Constitution and the Michigan Constitution.

**D. Plaintiff's Claims for Breach of Contract and Tortious Interference with a Contract or Business Relationship are plausible.**

Defendants argue that Plaintiff does not have a plausible claim for breach of contract but

the contract between the parties (Plaintiff's Exhibit B, ECF No. 9, Pages 34-40) contains all

elements of an enforceable contract including offer, acceptance, and consideration. Plaintiff's

Amended Complaint clearly states the existence of a contract, that the Defendant Caramagno

breached its terms, and that the breach caused damages to the Plaintiff.

Defendants claim there is no contract between the parties because the final version was

executed by Plaintiff and Defendant Caramagno after 5 pm on April 24, 2020, and the final

version still contained the time constraint contained in the original version. The original version

was signed by Seller Defendant Caramagno in the documents uploaded by Defendant Gottlieb at

3:23 a.m. on April 24, 2020.

The parties' intent to proceed with the sale under the terms of the revised Agreement is

clearly demonstrated both by the fact that Plaintiff and Defendant Caramagno executed it, and

the fact that they both did so swiftly after it was sent by Gottlieb at 5:19.p.m. Plaintiff signed at

5:26 p.m. and Caramagno signed at 5:29 p.m. Defendant Gottlieb herself made it impossible for

19

either the Plaintiff or Defendant Caramagno to sign the document before 5:00 p.m. because she did not forward it to them for signature until after 5:00 p.m.

The parties' behavior over the following four days clearly indicate their ratification of the terms of the Agreement and their mutual intent to finalize the sale.

The case Defendants rely upon to support their position (*Blackburne* quoting *Pakideh)* is not on point because that case concerns only one party to a contract failing to accept timely. In the case at bar both Plaintiff and Defendant Caramagno executed after 5:00 p.m., and Defendant Gottlieb didn't send it to Plaintiff and Defendant Caramagno for signature until after 5:00 p.m. Furthermore, the contract itself was drafted by Defendant Gottlieb, not by Plaintiff, and it was Defendant Gottlieb that put in the stipulation for 5:00 p.m. on April 24, 2020 in the original version of the contract, not Plaintiff.

The ensuing actions of all parties to this action between April 24, 2020 and April 28, 2020, as set forth in detail in Plaintiff's Amended Complaint, indicate that they all viewed the Agreement as binding.

Additionally, if, as Gottlieb later claimed to Plaintiff's escrow agent, the sale was canceled and the contract with Plaintiff was invalid, why did Gottlieb insist that Plaintiff sign a Release and Termination of that contract, if it was invalid?

As to Plaintiff's claim for tortious interference with a contract, Defendants state that Plaintiff did not plead the existence of a contract. She most certainly did. As set forth in Plaintiff's Amended Complaint, Defendant Gottlieb interfered with the contract between Plaintiff and Defendant Caramagno for the sale and purchase of the Property to Plaintiff. She did so by suddenly claiming that the Property could not be sold to Plaintiff due to the so-called existence of a prior purchaser with priority over Plaintiff, a position that had never been alluded

20

to by Defendant Gottlieb prior to the afternoon of April 28, 2020. This is not the kind of detail that could have escaped the notice of a broker. Defendant Gottlieb further interfered with the contract by contacting Plaintiff's loan officer and falsely stating that Plaintiff had signed a Termination of the contract, and by contacting the escrow agent holding Plaintiff's earnest money deposit and falsely stating that the contract between Plaintiff and Defendant Caramagno was invalid and that the sale had been cancelled. Defendant Gottlieb also demanded that Plaintiff sign a Termination of her contract, which a) acknowledges the existence of a contract and b) constitutes interference with that contract and its faithful performance.

Again, if there was no valid contract as Defendant now pleads in their Brief, why did Gottlieb prepare and send Termination and Release document to Plaintiff, why did she insist that Plaintiff sign it, why did she then threaten to contact Plaintiff's employer, why did she then actually call Plaintiff's employer to try and effect a signature of such a Release?

It cannot be construed that telling a deliberate falsehood to Plaintiff's lender and employer is ethical, and in this context it was also illegal and fraudulent.

Defendant Gottlieb then further interfered with the business relationship between Plaintiff and her employer because Quicken Loans is both Plaintiff's employer and was the lender in this case. While Plaintiff was not terminated from her employment as a result of Defendant Gottlieb's actions, she was embarrassed, humiliated, and suffered emotional distress as a direct and proximate result of Defendant Gottlieb's actions.

**E. Plaintiff's Claim for Fraudulent Misrepresentation is plausible.**

Although Rule 9(b) requires a plaintiff to plead the "circumstances constituting fraud" with particularity, allegations of "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To determine whether a plaintiff's factual

21

allegations give rise to an inference of fraudulent intent, "the court must conduct an inquiry of the competing plausible inferences and must find scienter has been sufficiently pled as long as a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Chamberlain v. Reddy Ice Holdings, Inc.,* 757 F. Supp. 2d 683, 701 (E.D. Mich. 2010); see also *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 848 (6th Cir. 2007) (allegations of a defendant's motive and opportunity "may, on occasion, rise to the level of creating a strong inference of reckless or knowing conduct).

In the case at bar, either Defendants' representation contained in the contract prepared by Defendant Gottlieb and signed by both Defendants that there was no other claim on the Property was false, or their later claim that there was a prior, binding offer on the Property is false. **Both cannot be true**. Defendants' representation contained in the contract prepared by Defendant Gottlieb and signed by both Defendants that they would not enter into any agreement pertaining to the Property after executing the contract is clearly false, since they had to have executed documents to finalize the sale of the Property to another party subsequent to the signing the contract with Plaintiff.

The representation of Defendant Gottllieb to Plaintiff's employer that Plaintiff had signed a release and termination of her contract with Defendants was absolutely false when she made it and Defendant Gottlieb of course knew it was false.

## CONCLUSION

It is remarkable that Defendants would assert that Plaintiff has failed to state a claim upon which relief may be granted when all of the facts necessary to prove Plaintiff's case are pled with attachments in the First Amended Complaint. Practically every fact relied upon at this

22

stage of this case came from the words or actions of the Defendants themselves so they cannot claim to be surprised. The multiple inconsistent positions adopted by Defendants create questions of fact to be determined. These inconsistencies also point to serious credibility problems. Defendants and their counsel are aware that these inconsistencies and credibility issues make this motion even more spurious. Defendant's arguments brazenly ask this Court to adopt some of Defendant's statements as true while ignoring other inconsistent behavior and statements.

Additionally, Defendants attempt to set the standard for proof and plausibility so high that no Plaintiff could ever meet it. Without an ounce of discovery in this case, there is compelling circumstantial and direct evidence of all counts against these Defendants. Plaintiff doesn't need a confession of racial discrimination to prevail on a Motion to Dismiss under FRCP 12(b)(6) when a jury can find a Defendant guilty of murder without a confession in a criminal case. With the known facts in this case, it seems extremely premature to ask for dismissal rather than waiting for a FRCP 56 motion. Defendants know what communications were made with themselves, their neighbors, the undisclosed buyer, the other Title Company, and others. They know when these communications were made. If their actions are so innocent, they could have disclosed all of this information when it was requested last year. They could have submitted it all with their Initial Disclosures in this case. Instead, they deflected and now seek to end any discovery before it begins in spite of the compelling evidence which they knew of and which they created that we have so far in the Complaint.

Accordingly, Defendants request that this Honorable Court dismiss this motion.

23

DUNLAP & KUCMIERZ, PLLC

/s/ Rod A. Dunlap

ROD A. DUNLAP (P37558)
JASON J. KUCMIERZ (P63842)
Attorneys for Plaintiff
37000 Grand River Ave., Ste. 230
Farmington Hills, MI  48335
(248) 474-4000

Dated: 6/21/2021

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

I, Rod A. Dunlap, certify that this document complies with Local Rule 5.1(a) and Local

Rule 7.1(d)(3).

/s/ Rod A. Dunlap

ROD A. DUNLAP (P37558)
JASON J. KUCMIERZ (P63842)
Attorneys for Plaintiff
37000 Grand River Ave., Ste. 230
Farmington Hills, MI  48335
(248) 474-4000

Dated: 6/21/2021

## CERTIFICATE OF SERVICE

I certify that on June 21, 2021, I electronically filed the foregoing document, together

with Exhibit A with the Clerk of the Court using the ECF system which will send notification of

such filing to all attorneys of record.

/s/ Amanda Gagnon
Amanda Gagnon, Legal Assistant

24

25

EXHIBIT A



# Kiara Thornton

Triple Crown Banker at Quicken Loans - Refinance Team



## 75 Reviews

---

## ABOUT KIARA

📞 (866) 953-7627 ext. 68851 (tel:(866)953-7627,1,68851)

✉ Email (mailto:KiaraThornton@quickenloans.com)

🔗 Website (https://www.quickenloans.com/?qls=SPF_universl.2308201611)

License: NMLS 1387464

Get a Quote (http://www.quickenloans.com/ref/KiaraThornton@quickenloans.com?qls=EGL_socproof.reviewrfrl)

Honesty, integrity and trust are the traits that Kiara values as a home loan expert. Not only does Kiara go out of the way to simplify the mortgage process, but also takes pride in creating lasting personal relationships with clients. When Kiara's knowledge is combined with Quicken Loans online tools, clients are in for an amazing loan experience.

📍 1050 Woodward Avenue
Detroit, MI 48226

---

### Quicken Loans - Refinance Team